UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICHARD CLIFFORD McINTYRE,

Petitioner,

v.

ISIDRO BACA, et al.,

Respondents.

Case No. 3:13-cv-00079-MMD-WGC

ORDER

Before the Court for a decision on the merits is an application for a writ of habeas corpus filed by Richard Clifford McIntyre, a Nevada prisoner. (Dkt. no. 5.)

**I.    BACKGROUND**[1]

On September 25, 2008, McIntyre entered a guilty plea, in a state district court for Nevada, to two counts of burglary. Under the terms of his plea agreement, the parties would be free to argue at the time of sentencing, though the State would stipulate to concurrent sentences of life with the possibility of parole after ten years if the court adjudicated McIntyre a habitual criminal.

On November 24, 2008, the court held the sentencing hearing. Defense counsel acknowledged McIntyre had eight prior felony convictions, and that the State had proof for the minimum three convictions required to support the habitual criminal

_____

[1]This case history is derived from the exhibits filed under docket numbers 8 through 11 and from this Court's own docket entries.

enhancement. The State produced certified copies of the six prior convictions listed in the information, but withdrew one prior conviction for petty theft. The State presented the testimony of an investigating detective. The defense presented the testimony of a forensic psychiatrist and statements from McIntyre's mother and sister. In addition, McIntyre gave a statement of allocution.

At the conclusion of the hearing, the court adjudicated McIntyre a habitual criminal and sentenced him to two concurrent sentences of life with the possibility of parole after ten years. The judgment of conviction was entered the same day. McIntyre appealed. On September 3, 2009, the Nevada Supreme Court affirmed the convictions.

On August 9, 2010, McIntyre filed a proper person state habeas petition in the state district court. Following appointment of counsel, he filed a supplemental petition on April 4, 2011. On June 6, 2011, the court denied the petition. McIntyre appealed.

On January 16, 2013, the Nevada Supreme Court affirmed the denial. On February 13, 2013, McIntyre initiated this federal proceeding by mailing his federal petition for writ of habeas corpus to this Court. Respondents moved to dismiss the petition, arguing that Grounds 4 and 5 were unexhausted. This Court granted the motion, concluding that Ground 5 was wholly without merit and Ground 4 was also without merit to the extent it incorporated Ground 5.

The Court now addresses the merits of the remaining claims in the petition.

## II.   STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not 'issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as ""a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

The state court's factual findings are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schriro v.*

*Landrigan*, 550 U.S. 465, 473-74 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. In *Pinholster*, the Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made," and, therefore, the record under review must be "limited to the record in existence at that same time, i.e., the record before the state court." *Id* at 182.

## III.   DISCUSSION

### A.   Ineffective assistance of counsel

Grounds 1 and 2 of McIntyre's petition allege that he was deprived of his constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984), provides the federal law standard for analyzing a claim of ineffective assistance of counsel. Under *Strickland*, the petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The first *Strickland* prong asks whether an attorney's performance fell below an objective standard of reasonableness. *Id*. at 687-88. The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. To satisfy the prejudice prong, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

In Ground 1, McIntyre claims that he received ineffective assistance of counsel, in violation of his constitutional rights, because his counsel failed to investigate eleven

///

burglaries that he was accused of committing.[2] McIntyre claims that the only evidence of his involvement in these crimes was provided by his co-defendant and another informant who had charges pending against him. Though the State agreed not to pursue charges on these crimes, McIntyre contends that they were used as leverage in his plea negotiations and, had counsel investigated the crimes, he would have insisted on going to trial or, at least, negotiated a more beneficial plea agreement. In addition, he contends that the allegations of his involvement in these additional burglaries "encouraged the trial court to adjudicate him a habitual criminal." (Dkt. no. 5 at 7.[3])

McIntyre presented this claim to the Nevada courts in his state post-conviction proceeding. (Dkt. no. 10-8 at 10-13.) The Nevada Supreme Court analyzed the claim under *Strickland* and *Hill*. (Dkt. no. 10-14 at 2.) In denying the claim, the court stated as follows:

> [A]ppellant claims that the district court erred in denying his claim that trial counsel was ineffective for failing to investigate. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. He failed to provide specific facts that, if true, would entitle him to relief. Mere speculation as to what the investigation may have produced is not sufficient. Therefore, the district court did not err in denying this claim without an evidentiary hearing.

(*Id.* at 3.)

Ground 1 discusses specific evidence in relation to only one of the crimes — "the Pour House robbery." (Dkt. no. 10-8 at 11.) In the absence of any explanation as to what a more thorough investigation would have revealed, McIntyre fails to provide sufficient support for his claim that counsel was ineffective. *See Villafuerte v. Stewart*, 111 F.3d 616, 630-32 (9th Cir.1997) (rejecting petitioner's ineffective assistance claim where he presented no evidence concerning what counsel would have found had he

---

[2]In exchange for McIntyre's guilty plea to two counts of burglary, the State agreed not to pursue charges in ten other burglary cases. (Dkt. no. 8-7 at 5.) Because allegations in Ground 1 are vague, it is not clear to this Court how McIntyre arrived at the number eleven.

[3]References to page numbers for documents filed electronically are based on CM/ECF pagination.

1   interviewed a witness or investigated further); *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th

2   Cir. 1996) (holding there was no ineffective assistance of counsel where the petitioner

3   failed to explain "what compelling evidence additional interviews would have unearthed

4   or to explain how an investigation of aggravation evidence would have negated the

5   evidence of the multiple gunshot wounds").

6        The Nevada Supreme Court applied the correct federal law standard to Ground

7   1. McIntyre has not shown that the court's application of that standard was

8   unreasonable or that the court's adjudication of the claim resulted in a decision based

9   on an unreasonable determination of the facts.  Accordingly, under § 28 U.S.C. 2254(d),

10  this Court must defer to the Nevada court's denial of the claim.

11       Ground 1 is denied.

12       In Ground 2, McIntyre claims that he received ineffective assistance of counsel,

13  in violation of his constitutional rights, because counsel never informed him that his

14  "intoxication and extreme methamphetamine hallucinations" could have been

15  considered by a jury in determining the element of specific intent. (Dkt. no. 5 at 10.)

16  Here again, he contends that, but for counsel's omission, he would have insisted on

17  going to trial or, at least, negotiated a more beneficial plea agreement.

18       McIntyre presented this claim to the Nevada courts in his state post-conviction

19  proceeding. (Dkt. no. 10-8 at 13-14.) The Nevada Supreme Court analyzed the claim

20  under *Strickland* and *Hill*. (Dkt. no. 10-14 at 2-3.) In denying the claim, the court stated

21  as follows:

22            [A]ppellant claims that the district court erred in denying his claim
23       that trial counsel was ineffective for failing to inform appellant that his
          intoxication at the time of the crime may have negated his specific intent to
24       commit burglary. Appellant fails to demonstrate that he was prejudiced
          because he fails to demonstrate that there was a reasonable probability of
25       a different outcome had trial counsel informed him about specific intent.
          Negating the specific intent to commit burglary would have been nearly
26       impossible because appellant entered the building by prying open the door
          with a pry bar, cut the alarm and phone systems, and smashed slot
27       machines to get money. Therefore, the district court did not err in denying
28       this claim without an evidentiary hearing.

1    (*Id.* at 3.)

2         To establish a defense of voluntary intoxication under Nevada law, "the evidence

3    must show not only the defendant's consumption of intoxicants, but also the intoxicating

4    effect of the substances imbibed and the resultant effect on the mental state pertinent to

5    the proceedings." *Nevius v. State*, 699 P.2d 1053, 1060 (Nev. 1985). Absent from the

6    record in this case is any evidence of this nature. Thus, Ground 2 is wholly

7    unsubstantiated.

8         The Nevada Supreme Court applied the correct federal law standard to the claim.

9    McIntyre has not shown that the court's application of that standard was unreasonable

10   or that the court's adjudication of the claim resulted in a decision based on an

11   unreasonable determination of the facts. Accordingly, under § 28 U.S.C. 2254(d), this

12   Court must defer to the Nevada court's denial of the claim.

13        Ground 2 is denied.

14        **B.    Validity of guilty plea**

15        In Ground 3, McIntyre claims that his guilty plea was involuntary because he was

16   under the influence of prescription medications (Risperdal and Vistaril) and no inquiry

17   was made into this issue during his plea canvass. He claims that the medications

18   impacted his ability to understand the proceedings against him.

19        The Due Process Clause requires that a guilty plea is both knowing and

20   voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). The court in *Boykin* held

21   that, to satisfy this requirement, the record must show that the defendant was made

22   aware that he was waiving his privilege against compulsory self-incrimination

23   guaranteed by the Fifth Amendment, the right to a trial by jury, and the right to confront

24   one's accusers. *Id.* at 243.

25        The court has identified other prerequisites for a plea to be considered knowing

26   and voluntary.[4] For example, a guilty plea is voluntary for due process purposes only if

27        ⁴The terms "intelligent" and "knowing" have been used interchangeably in
28   Supreme Court jurisprudence addressing the validity of a defendant's guilty plea.
     *(fn. cont…)*

1  a defendant has received notice of the true nature of the charges against him.

2  *Henderson*, 426 U.S. at 645. In addition, a guilty plea is not "voluntary," and thus invalid,

3  when it is the product of threats, improper promises, or other forms of wrongful

4  coercion. *See Brady v. United States*, 397 U.S. 742, 754-55 (1970). Also, a plea of

5  guilty is voluntary and knowing only if it is "entered by one fully aware of the direct

6  consequences" of his plea. *Id.* at 755. "The voluntariness of [a defendant's] plea can be

7  determined only by considering all of the relevant circumstances surrounding it." *Id.* at

8  749.

9  McIntyre presented Ground 3 to the Nevada courts in his state post-conviction

10  proceeding.  (Dkt. no. 10-8 at 14-16.)  In denying the claim, the court stated as follows:

11          [A]ppellant claims that the district court erred in denying his claim
        that his plea was involuntary. A guilty plea is presumptively valid, and a
12      petitioner carries the burden of establishing that the plea was not entered
        knowingly and intelligently. *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d
13      364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 675, 877 P.2d
        519, 521 (1994). Further, this court will not reverse a district court's
14      determination concerning the validity of a plea absent a clear abuse of
        discretion. *Hubbard*, 110 Nev. at 675, 877 P.2d at 521. In determining the
15      validity of a guilty plea, this court looks to the totality of the circumstances.
        *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Bryant*,
16      102 Nev. at 271, 721 P.2d at 367.

17          Appellant claims that his plea was involuntary because he was on
        anti-psychotic medications at the time he entered his plea, which made
18      him unable to concentrate and feel as though he was in "a tunnel." He
        also claimed that his plea was involuntary because the district court failed to
19      ask appellant whether he was under the influence of any medication at the
        change of plea hearing. Appellant failed to demonstrate that his plea was
20      involuntary. Appellant did not claim that he did not understand the plea or
        the proceedings, just that he felt like he was in "a tunnel." Further,
21      appellant answered all questions asked by the district court appropriately.
        Because appellant fails to demonstrate that the medications caused his
22      plea to be invalid, he failed to demonstrate that the district court's failure to
        ask him about medications rendered his plea invalid. Therefore, the district
23      court did not err in denying this claim without an evidentiary hearing.

24  _____

25  *(...fn. cont.)*
    *Compare*, *e.g.*, *Parke v. Raley*, 506 U.S. 20, 28 (1992) (knowing and voluntary) *with Hill*,
26  474 U.S. at 56 (voluntary and intelligent). Also, the court has described a guilty plea as
    being "voluntary in the constitutional sense," in referring to whether the defendant
27  understands the nature of the constitutional protections that he is waiving and whether
    his guilty plea is an "intelligent admission of guilt." *See Henderson v. Morgan*, 426 U.S.
28  637, 645 n.13 (1976).

1   (Dkt. no. 10-14 at 3-4.)

2       Here again, McIntyre's IAC claim is without evidentiary support. That is, he has

3   failed to show that the voluntariness of his plea was undermined by the medications he

4   claims to have been taking at the time. Indeed, the forensic psychiatrist called by the

5   defense at the sentencing hearing testified about the purpose and effect of the

6   medications McIntyre was taking and made no mention of them impairing his cognitive

7   abilities. (Dkt. no. 8-11 at 44-45.) She further testified that, when she interviewed

8   McIntyre, she found him coherent and oriented to time and space. (*Id.* at 46.)

9       Although it cited to only Nevada cases, the Nevada Supreme Court's analysis

10  was not contrary to federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that §

11  2254(d) does not require citation to U.S. Supreme Court cases, or even awareness of

12  them, "so long as neither the reasoning nor the result of the state-court decision

13  contradicts them"). McIntyre has not shown that the court's analysis was unreasonable

14  or that the court's adjudication of the claim resulted in a decision based on an

15  unreasonable determination of the facts. Accordingly, under § 28 U.S.C. 2254(d), this

16  Court must defer to the Nevada court's denial of the claim.

17      Ground 3 is denied.

18      **C.    Cumulative error**

19      In Ground 4, McIntyre claims that the cumulative effect of the errors underlying

20  his conviction and sentence amounts to a violation of his constitutional rights. As errors,

21  he cites the "ineffective actions of counsel" combined "with his inability to concentrate

22  due to the medications he was on when he entered his plea" and being "charged with

23  twelve burglaries." (Dkt. no. 5 at 18.)

24      In some cases, although no single trial error is sufficiently prejudicial to warrant

25  reversal, the cumulative effect of several errors may still prejudice a defendant so much

26  that his conviction must be overturned. *Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th

27  Cir. 2003). Cumulative error is more likely to be found prejudicial when the

28  government's case is weak. *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.

1996). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011); *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

Because McIntyre has not established the existence of a constitutional error, Ground 4 must fail.

Ground 4 is denied.

## IV.    CONCLUSION

For the reasons set forth above, McIntyre's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating McIntyre's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of McIntyre's habeas claims.

///

///

///

It is therefore ordered that the petitioner's petition for writ of habeas corpus (dkt. no. 5) is denied. The Clerk shall enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

DATED THIS 15th day of March 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE